IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| EDWARD ODQUINA,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU, *et al.*,<br><br>Defendants. | Case No. 22-cv-00407-DKW-RT<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT AND ACCOMPANYING JOINDERS; AND (2) DISMISSING CASE WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** |

Plaintiff Edward Odquina brings suit against the City and County of Honolulu (the "City") and Anne E. Lopez in her official capacity as Attorney General of the State of Hawaiʻi (the "State"), raising First Amendment free speech and Fourteenth Amendment due process claims arising out of the City's revocation of a vanity license plate with the phrase: "FCKBLM." Specifically, Odquina asserts that Hawaiʻi Revised Statutes ("HRS") § 249-9.1 and Part VI of the Rules and Regulations of the Department of Finance for the City and County of Honolulu (the "Rules") are vague, overbroad, and underinclusive, that Defendants' application of the same was unreasonable and discriminated based on viewpoint, and that the City failed to provide Odquina with sufficient process before revoking the vanity plate. The City and State now move to dismiss the First Amended

Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6), asserting that each of these claims fails as a matter of law.

Having reviewed the FAC, the motions briefing, and the record generally, the Court agrees with Defendants.  Despite amending his complaint, Odquina has failed to point to *any* intervening changes in fact or law that would alter the bases for this Court's prior conclusions that: (1) vanity license plates are a form of government speech; (2) HRS § 249-9.1 and Rule 6.8 are reasonable and viewpoint-neutral; and (3) HRS § 249-9.1 and Rule 6.8 are neither vague nor overbroad.[1] Further, the Court additionally finds that Odquina has failed to assert an underinclusivity claim or demonstrate a cognizable liberty or property interest in his desired vanity plate, and the City has provided all process that was due. Accordingly, as discussed further below, the City and State's motions to dismiss, Dkt. Nos. 65 & 66, and their accompanying joinders, Dkt. Nos. 69 & 70, are GRANTED.  Moreover, because amendment would be futile, dismissal is WITH PREJUDICE and WITHOUT LEAVE TO AMEND.

## FACTUAL & PROCEDURAL BACKGROUND[2]

The following facts are alleged in the FAC:

_____

[1] *See generally* Dkt. No. 31 (November 4, 2022 Order Denying Plaintiff's Motions for a Preliminary Injunction and a Temporary Restraining Order) (the "Order") and Dkt. No. 46 (June 28, 2023 Ninth Circuit Memorandum Affirming the Order).

[2] The factual and procedural background set forth herein is condensed as relevant to the instant motions to dismiss.  A more detailed version is set forth in this Court's Order.  Dkt. No. 31 at 3–15.

Hawaiʻi Revised Statutes, Chapter 249 *et seq.*, governs county vehicular taxes including, *inter alia*, the issuance of license plates in the State of Hawaiʻi. FAC at ¶ 8, Dkt. No. 62.  As relevant here, HRS § 249-9.1 empowers the Director of Finance of the City and County of Honolulu to issue special number plates—known commonly as "vanity plates"—provided that:

> The special number plates shall conform to the requirements provided for the uniform number plates except that the owner may request the choice and arrangement of letters and numbers.  The maximum number of letters and numbers shall be six and only one hyphen will be allowed in addition to and in lieu of the six letters and numerals.  No other punctuation marks shall be allowed.  The director of finance shall not issue special number plates which have the letter and numeral combination of regular plates, are misleading or publicly objectionable.

*Id.*; HRS § 249-9.1.  To assist with the implementation of these terms, HRS § 249-9.1 mandates that the Director of Finance "adopt rules pursuant to chapter 91 to carry out this section."  FAC at ¶ 10; HRS § 249-9.1.

Accordingly, on November 14, 1990, the City promulgated administrative rules regarding personalized license plates.  FAC at ¶ 10.  These Rules provide in relevant part:

> Rule 6.1 <u>Purpose and Scope</u>
> These rules govern the procedures to be followed for the application and issuance of special number plates.

> Rule 6.2 <u>Definition</u>
> As used in these rules, unless the context clearly requires otherwise, "Director" shall mean the Director of Finance of the City and County of Honolulu, or his duly authorized subordinates.

Rule 6.6 <u>Design of Special Number Plates</u>
1. Special number plates shall conform to all requirements as provided in Section 249.91-1, HRS.

   . . .

Rule 6.7 <u>Applications for Special Number Plates</u>
1. Persons desiring special number plates shall make application on forms furnished by the Director.
2. Applications shall be approved on a first-come first-served basis and will not be considered approved until the required fees are paid and the letter/numeral combination authorized by the Director for issuance.

. . .

Rule 6.8 <u>Standards for Denial of Special Number Plates</u>[3]
1. The following applications shall be denied:

   . . .

   c.  Applications bearing the following types of words or connotations:

      (1)Words or connotations of a sexual or vulgar nature, or relating to excretory functions or intimate body parts;

      . . .

2. For the purposes of this rule, the following standards shall apply:

   a.  In determining the connotation, inference or tendency of a given request, the Director shall apply an objective test of what inference may reasonably be detected by one conversant with whatever linguistic, numerical or phonetic mode of communication that may apply to the request. The Director may not consider the subjective intent or the declared meaning of the applicant. The request shall be considered to be the most objectionable connotation that reasonably may be ascribed to it.

---

[3]Rule 6.8 was amended in 1994, and again in 2023. *See* FAC at ¶ 10; Dkt. No. 66-1 at 2. Odquina appears to specifically challenge the 1994 version of Rule 6.8 which was operative at the time of the events leading up to his suit. *See* FAC at ¶ 10; Dkt. No. 75 at 2 n.5 ("first, Odquina's claims are based on the [City's] actions that occurred under the old rules and so damages, as requested in the prayer for relief, are still applicable and second, County's new rules merely repackage the same underlying issue of implied profanity in a vanity plate into essentially the same prohibitions.").

    b. "Words of a vulgar nature" shall be those words, the connotation of which is "vulgar," "usually considered vulgar," "not used in polite conversation," or equivalently designated in Webster's Collegiate Dictionary, current edition.

    c. "Intimate body parts" shall include breasts, genitalia, pubic area, buttocks, thighs, and organs related to sexual and eliminatory functions, regardless of whether the request is couched in common, foreign, vulgar, scientific or other message form.
      . . .

3.  The policies underlying this rule are to:
      . . .

    b. Protect the public and children, who by necessity must use the public highways and therefore be exposed to license plate messages, from offensive, obscene, or unduly distractive messages that may tend to impair their safety or privacy;

    c. Protect license plates, which are necessary to the lawful regulation and identification of vehicles, from vandalism and defacement that impair their function.
      . . .

Rule 6.12 <u>Right of Applicant to a Hearing</u>
Whenever the Director denies the issuance of a special number plate pursuant to the Hawaii Revised Statutes or these Rules and Regulations of the Director of Finance, the applicant shall have 10 days to file a notice of appeal for a hearing with the Director.

Rule 6.13 <u>Hearing</u>
Within twenty (20) working days from the filing of such notice of appeal, the Director or a designated hearing officer shall conduct a hearing.  The hearing shall be conducted in conformity with the provisions of Section 91-9 HRS, relating to contested cases.

Rule 6.14 <u>Decision and Order</u>
Within ten (10) working days after the hearing, the Director may rescind or affirm the denial.  Each decision or order adverse to the applicant shall be in writing or stated in the record and shall be accompanied by separate findings of fact and conclusions of law.  The applicant shall be notified by delivery or mailing of a certified copy of

the decision and order and accompanying findings and conclusions within a reasonable time to the applicant or his attorney of record.

Rule 6.15 <u>Reconsideration</u>
Any applicant to whom an adverse decision and order has been rendered by the Director may request a reconsideration of such adverse decision and order provided that such request shall be based on new evidence which was not considered by the Director during the original hearing.

Rule 6.16 <u>Appeal to District Court</u>
An applicant to whom an adverse decision and order or ruling has been rendered may file an appeal to the District Court of Honolulu as provided in Section 286-58, HRS.

FAC at ¶ 10.  The City also included a .pdf on its website, under the link

"personalized license plates," which stated, *inter alia*:

A Motor Vehicle Registration Branch review staff will reject requests for personalized license plates with letter and number combinations that are deemed to be potentially offensive to good taste and decency.

All personalized license plate requests get a first-round review.  The ones deemed questionable get flagged for additional scrutiny.

. . .

All license plates issued in the City and County of Honolulu are government property and speak for the Hawaii state government.  The City and County of Honolulu has a right to regulate what can be written on a license plate as long as the regulations are reasonable and uniformly applied.

Forbidden phrases include terms of lust, depravity, prejudice, hostility, contempt and profanity in English or any other language.

Motorists who are applying for personalized license plates must follow state government guidelines prohibiting lewd, obscene or hateful language.

> Motorists requesting personalized plates have to explain on the application the meaning of the phrase they want.

*Id.* at ¶ 47; Dkt. No. 62-3 at 2–3.  Finally, the City advised potential applicants on its personalized license plate eligibility and reservation website that, "[t]he Customer Services Department reserves the right to reject an application at any time for any reason."  FAC at ¶ 47.

On January 5, 2021, Odquina applied for a personalized vanity license plate with the letter combination "FCKBLM."  *Id.* at ¶ 12.  This phrase had a dual meaning—first, to indicate Odquina's vehement[4] ideological opposition to the Black Lives Matter movement, which is commonly abbreviated as BLM, and second, as an acronym for Odquina's business, "Film Consulting KravMAGA Bloomberg, LLC."[5]  *Id.* at ¶¶ 15–16.  Shortly after applying, he received a telephone call from a City employee stating that the plate had been flagged and inquiring as to the meaning of the phrase, "FCKBLM."  *Id.* at ¶¶ 17.  Odquina explained that the letters were an acronym for his business, after which the

---

[4]Although not explicitly stated in the FAC, Odquina essentially admits that the first three letters of the license plate he sought—"FCK"—are intended to refer to the expletive "fuck."  *See* Dkt. No. 76 at 10 ("Odquina has a message and that message is especially coarse-offensive/profane."); Dkt. No. 75 at 13 (same).

[5]Odquina also runs a website from which it appears that "FCKBLM" may also stand for the name of his nonprofit: "FIGHT COMMUNISM AND KNUCKLEHEAD BITCH LIBERAL MARXISTS."  *Support*, FCKBLM, www.fckblm.org (last visited Apr. 4, 2024); FAC at ¶ 16.

employee approved the plate. *Id.* Odquina received the plates shortly thereafter. *Id.*

Subsequently, in the summer of 2021, the City recalled Odquina's license plate as "objectionable" and directed him to surrender it. Specifically, the City sent Odquina a letter on July 6, 2021 and followed that with a telephone call on August 7, 2021. *Id.* at ¶¶ 17–18. When Odquina failed to respond to either communication, the City sent an additional letter on August 11, 2021 which read:

> This is a follow-up letter to confirm that the personalized special license plate (**FCKBLM**) has been recalled by the City and County of Honolulu. Thomas Farr, Supervising MVR Clerk I, left you a phone message on August 7, 2021 regarding the special plates, requesting that you return his call. He subsequently sent you a letter on Tuesday, August 10, 2021. Your personalized special license plate has been determined to be publicly objectionable due to an implied expletive in the first three combination of letters on the license plate.
>
> Please surrender this plate within six (6) business days from the date of this letter, no later than August 19, 2021. You can turn it in to any satellite city hall in the City and County of Honolulu. We will replace your recalled special license plate without additional charge. If you do not want another personalized special license plate, we will refund you the $25.00 fee that you paid for the original special plate.
>
> If you fail to return the recalled personalized special license plate by August 19, 2021, you will be driving your vehicle with a recalled, unauthorized license plate which is considered illegal and equivalent to a civil violation under Hawaii Revised Statutes (HRS) Chapter 249. Your vehicle may be subject to citation, penalty and possible seizure by the Honolulu Police Department, to which you may redeem within a ten-day period by payment of any delinquent penalties, the cost of storage, and other charges incident to the seizure of the vehicle.

> Furthermore, you will not be able to register your vehicle again in the City and County of Honolulu until the recalled license plate is properly surrendered to the Motor Vehicle Registration Branch. Your cooperation and compliance in this matter would be appreciated.

Dkt. No. 62-2; FAC at ¶¶ 19–20.  Despite receiving these notices, however, Odquina refused to surrender the plates which he now asserts have since been stolen.  *See* FAC at ¶¶ 21–22; Dkt. No. 45-1 at 2–3.  Accordingly, he has been unable to register his vehicle since 2021, rendering him unable to lawfully drive his vehicle on a public road or advertise his business in the manner he desires.  FAC at ¶ 22.

Nearly a year later, on June 30, 2022, Odquina received a letter from the City's Department of Corporation Counsel, explaining that the City had "authorized . . . legal action against [him] for [his] failure to surrender the special number plates" after having "informed [him] on numerous occasions that the 'FCKBLM' plates are 'publicly objectionable,' and accordingly are in violation of . . . Haw. Rev. Stat. § 249-9.1."  *Id.* at ¶¶ 21, 23.  On September 9, 2022, Odquina filed a complaint, a motion for a temporary restraining order, and a motion for a preliminary injunction against the City and State, asserting that HRS § 249-9.1 violates the First Amendment both facially and as applied.  Dkt. Nos. 1–3.  The City subsequently filed a counterclaim, claiming entitlement to immediate

possession of the "FCKBLM" license plates and requesting that the Court issue a writ of replevin and mandatory injunction for the plates' return.[6]  Dkt. No. 18-1.

On November 4, 2022, the Court denied Odquina's motions, finding that he was unlikely to succeed on the merits of his claims.  Dkt. No. 31.  Odquina sought interlocutory review from the Ninth Circuit, which affirmed this Court's November 4 Order on June 28, 2023.  *See* Dkt. Nos. 35 & 46.

On September 26, 2023, Odquina filed his FAC, asserting the following claims:

Count I: U.S. Const., Amend. I

Count II: H.R.S. §249-9.1 Violates the First Amendment As Applied to Odquina

Count III: H.R.S. §249-9.1 Violates the First Amendment Facially

Count IV: H.R.S. §249-9.1 and County Rule 6.8 Violate the First Amendment to the U.S. Constitution As Applied to the States Through the Fourteenth Amendment to the U.S. Constitution Because They Are Underinclusive and Overinclusive

Count V: Reasonableness

Count VI: Constitutional Right to Due Process and Fair Notice.

---

[6]Based on Odquina's failure to plead or otherwise defend against the City's counterclaim, the Clerk of Court entered default against Odquina on December 1, 2022.  Dkt. No. 36.  Thereafter, on January 9, 2023, the parties stipulated to stay proceedings on the counterclaim "pending a final decision by the U.S. Court of Appeals for the Ninth Circuit on Plaintiff's appeal, case no. 22-16844, and/or any further appeal."  Dkt. No. 45 at 2.

FAC at ¶¶ 42–132.  When taken as a whole, Odquina therefore appears to assert:
(1) that HRS § 249-9.1 and Rule 6.8 violate the First Amendment, as applied; (2)
that HRS § 249-9.1 and Rule 6.8 facially violate the First Amendment; and (3) that
the City violated Odquina's due process rights under the Fourteenth Amendment
by revoking the "FCKBLM' license plate without a hearing and without informing
him of his appeal rights.[7]  *See generally* FAC at ¶¶ 42–132; *see also* Dkt. No. 65-1
at 6.  As such, Odquina asks the Court to:

1.  Declare Hawaii Revised Statutes § 249-9.1 and County Rule 6.8,
    facially and as applied to Plaintiff, unconstitutional under the First
    and Fourteenth Amendment;

2.  Enjoin Defendants, their employees, agents, successors, assigns,
    and all persons acting in concert with them, from continuing to
    enforce the ban on personalized license plate configurations
    contained in Hawaii Revised Statutes, § 249-9.1, as well as any and
    all implementing administrative rules and regulations, and practices
    and policies by which Defendants enforce the provision(s) against
    Plaintiff or any other person, including, but not limited to, County
    Rules 6.5 through 6.16 pertaining to vanity license plates;.

3.  Award Plaintiff his costs and reasonable attorneys' fees pursuant to
    42 U.S.C. § 1988.

4.  Award nominal damages.

5.  Award compensatory damages.

---

[7]Several of Odquina's listed counts appear duplicative.  In fact, the State asserts that the "FAC is
argumentative, prolix, replete with redundancy, contains swaths of largely irrelevant material,
verbose, confusing, and is almost entirely conclusory . . . it is in violation of Rule 8 and dismissal
is proper."  Dkt. No. 65-1 at 22.  Though far from a model of clarity, the Court assumes that the
FAC does not violate Rule 8 and opts to instead address the merits of Odquina's FAC.

6.  Grant such other relief that this Court deems just and proper.

*Id.* at 43–44.

The City and State each filed a motion to dismiss on October 10, 2023, Dkt. Nos. 65 & 66, followed by motions for joinder on October 12, 2023, Dkt. Nos. 69 & 70.  Odquina filed his briefs in opposition on January 31, 2024, Dkt. Nos. 75 & 76, and the City and State replied on February 7 and 9, 2024, Dkt. Nos. 77 & 78. Pursuant to Local Rule 7.1(c), the Court elected to decide this matter without a hearing.  *See* Dkt. No. 79.  This Order now follows.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6)[8] authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is

---

[8]The City additionally moves for dismissal under Federal Rule of Civil Procedure 12(b)(1), asserting that Odquina lacks standing to challenge provisions of Rule 6.8 other than the prohibitions on profanity.  *See* Dkt. No. 66-1 at 17–19.  In response, Odquina clarifies that:

> For the State's law, Odquina attacks the "publicly objectionable" language in the state statute, see 1AC paragraph 8.  For the County, apart from its unwritten policies, habits, customs, routines etc., specifically with regard to its written rules, Odquina attacks those parts of the rules that are connected to "implied profanity" including, to the extent applicable, (c)(1), words or connotations of sexual or vulgar nature, and (2)(b), words of a vulgar nature.  Odquina agrees that the following prohibitions are not at issue:- (c) (2) Words of a religious nature, (c) (3) drug related words, (c)(4) words which are ethnic in origin and are offensive.

Dkt. No. 75 at 16–17.  Accordingly, as Odquina does not challenge the provisions of Rule 6.8 unrelated to profanity, the Court will not further address standing under Rule 12(b)(1).

entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is considered facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do factual allegations that only permit the Court to infer "the mere possibility of misconduct." *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

## I.   As-Applied Free Speech Challenge

The City and State first seek dismissal of Odquina's as-applied First Amendment challenge, contending that: (1) license plate alphanumerics are government speech and, therefore, not subject to the First Amendment; and (2) even if license plate alphanumerics constitute nonpublic forum speech, HRS § 249-9.1 and Rule 6.8 are reasonable and viewpoint neutral. Dkt. No. 65-1 at 8; Dkt.

No. 66-1 at 7.  Each contention is addressed in turn.

a.    **Government Speech**

The City and State initially argue that Odquina's First Amendment challenge must be dismissed *in toto* as license plate alphanumerics constitute government speech such that the First Amendment is inapplicable as a matter of law.  *See Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech.").

In evaluating this argument, the Court begins, once again, with the framework set forth in *Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015).[9]  Therein, the Supreme Court explained that to identify government speech, courts should look to three key factors: (1) the state's historic use of the medium to speak to the public; (2) the public's likely perception as to the identity of the speaker; and (3) the extent to which the government exerts

---

[9]In undertaking this analysis, the Court rejects Odquina's assertion that it is foreclosed from reconsidering whether license plate alphanumerics constitute government speech because "the Ninth Circuit already implicitly rejected this argument by finding a reasonableness test should be applied in evaluating Plaintiffs' claims."  Dkt. No. 76 at 3.  Indeed, such characterization of the Ninth Circuit's decision borders on outright misrepresentation.  The Ninth Circuit applied the reasonableness test only after explicitly noting, "[w]e *assume without deciding* that license plates bearing customized alphanumeric inscriptions—commonly known as vanity plates—fall outside the government-speech doctrine as explained in *Walker v. Texas Division, Sons of Confederate Veterans*, 576 U.S. 200 (2015), and are properly analyzed as nonpublic forums."  Dkt. No. 46 at 2 (emphasis added).  In other words, the cited Ninth Circuit decision in no way precludes this Court from deciding this matter on government speech grounds.

control over such messaging.  *See Walker*, 576 U.S. at 209–14; *see also Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022) (summarizing).  Applying these factors to Texas' specialty license plate design program, the Supreme Court concluded that such designs constituted government speech as: (1) the states had long used license plate slogans, among other things, "to urge action, to promote tourism, and to tout local industries;" (2) specialty license plate designs "are often closely identified in the public mind with the State;" and (3) under Texas law, the state had "direct control over the messages conveyed on its specialty plates," including "the design, typeface, color, and alphanumeric pattern."  *Walker*, 576 U.S. at 210–214 (brackets, quotation marks, and citations omitted); *see* Dkt. No. 31 at 18–20 (discussing further).  As such, no First Amendment review was necessary or appropriate.  *See Walker*, 576 U.S. at 207 ("When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says.").

Of course, *Walker* did not explicitly consider the issue of whether alphanumeric combinations on license plates, including those on vanity plates, constitute government speech.  *See id.* at 204 ("Here we are concerned only with the second category of plates, namely specialty license plates, not with the personalization program.").  Nevertheless, as the Court's previous Order denying Odquina's motions for a preliminary injunction and temporary restraining order has already explained at length, here, there can be little doubt that "Hawaiʻi's

vanity plate alphanumerics are government speech within the meaning of *Walker*."
*See* Dkt. No. 31 at 20–29.

First, the history of alphanumerics on license plates reveals that they have
long been used to convey messages by the states. *See Comm'r of Indiana Bureau
of Motor Vehicles v. Vawter*, 45 N.E.3d 1200, 1204–05 (Ind. 2015). In fact, the
City explicitly advises applicants for personalized license plates that "[a]ll license
plates issued in the City and County of Honolulu are government property and
*speak for the Hawaii state government*." Dkt. No. 62-3 at 3 (emphasis added).
Although this warning is not, by itself, determinative, it is bolstered by provisions
of Hawaiʻi law which explain that the principal purpose of alphanumeric
combinations—and of license plates more generally—is to permit administrative
officers, law enforcement, and public at large to identify, regulate, and differentiate
vehicles. *See, e.g.*, *id.* at 2 ("License plates are primarily meant for law
enforcement officers to identify vehicles in cases of crime and to safeguard drivers
on the road."); Rule 6.8(3)(c) (explaining that the limitations on personalized
license plate alphanumerics are intended, among other things, to "[p]rotect license
plates, which are necessary to the lawful regulation and identification of vehicles,
from vandalism and defacement that impair their function."); HRS § 249-9.1
(noting that "special number plates shall conform to the requirements provided for
the uniform number plates."). Through these provisions, the City and State make

clear that any individual meaning conveyed by a personalized alphanumeric combination is merely secondary to the government's message of identification contained in the same. Accordingly, this factor weighs in favor of finding government speech.

Second, just as in *Walker*, here, license plate alphanumerics are "closely identified in the public mind with the State." *Walker*, 576 U.S. at 212 (brackets and citation omitted). Although the general public may presume that a specific alphanumeric combination on a vanity license plate was selected by the owner of that vehicle, reasonable observers also understand that "[e]ach [Hawaiʻi] license plate is a government article serving the governmental purposes of vehicle registration and identification." *Id.*; *see* Dkt. No. 62-3 at 3 (affirming that "[l]icense plates are primarily meant for law enforcement officers to identify vehicles in cases of crime and to safeguard drivers on the road."); HRS §§ 249-2, 249-7 (requiring all vehicle owners to obtain license plates from the City and display them upon their vehicles). To this end, all license plates, including vanity plates, must contain an alphanumeric combination of not more than six characters directly sandwiched between the name "Hawaii" along the upper portion of the license plate and the motto "Aloha State" below. *See* HRS § 249-9 (setting forth license plate requirements); HRS § 249-9.1 (explaining that "special number plates shall conform to the requirements provided for the uniform number plates except

that the owner may request the choice and arrangement of letters and numbers.").

Moreover, all requests for personalized alphanumeric combinations must be made

to the City, which is endowed with the sole power to approve or disapprove such

requests, subject to certain guidelines. *See* HRS § 249-9.1 (providing for the

issuance of vanity plates); Rule 6.8 (setting forth standards for the denial of vanity

plates); Dkt. No. 62-3 at 2–3 (advising that the City "has the right to regulate what

can be written on a license plate" and outlining the review process for such

applications.). In other words, as "[t]he governmental nature of the plates is clear

from their faces" and the manner in which they are issued, it is evident that

observers will "routinely—and reasonably—interpret them as conveying some

message on the issuer's behalf."[10] *Walker*, 576 U.S. at 212 (brackets, quotation

marks, and citation omitted). This factor therefore also weighs in favor of

government speech.

Third, Hawaiʻi also "maintains direct control over the messages conveyed"

on its vanity plates. *Id.* at 213. As previously mentioned, state law provides that

all license plates—including personalized vanity plates—must adhere to strict style

requirements regarding the inclusion of the word "Hawaii" and the phrase "Aloha

---

[10]This may, in fact, be the intended result. *See Walker*, 576 U.S. at 212–13 (explaining "a person who displays a message on a [state] license plate likely intends to convey to the public that the State has endorsed that message. If not, the individual could simply display the message in question in larger letters on a bumper sticker right next to the plate.").

State," as well as the color, contrast, size, and number of alphanumeric characters. *See* HRS §§ 249-9, 249-9.1.  Perhaps more importantly, however, the State also places detailed limitations on the types of alphanumeric combinations that may appear on its license plates.  By statute, the City must approve all vanity license plate requests and may "not issue special number plates which have the letter and numeral combination of regular plates, are misleading or publicly objectionable." HRS § 249-9.1.  Further, in carrying out this mandate, the City has adopted extensive rules explaining the types of messages forbidden along with detailed definitions, examples, and policy justifications.  *See generally* Rule 6.8; Dkt. No. 62-3.  For example, as relevant here, the City provides:

Rule 6.8 <u>Standards for Denial of Special Number Plates</u>

1.  The following applications shall be denied:

     . . .

     c.  Applications bearing the following types of words or connotations:
          (1) Words or connotations of a sexual or vulgar nature, or relating to excretory functions or intimate body parts;

          . . .

2.  For the purposes of this rule, the following standards shall apply:
     a.  In determining the connotation, inference, or tendency of a given request, the Director shall apply an objective test of what inference may reasonably be detected by one conversant with whatever linguistic, numerical, or phonetic mode of communication that may apply to the request.  The Director may not consider the subjective intent or the declared

meaning of the applicant.  The request shall be considered to be the most objectionable connotation that reasonably may be ascribed to it.

b. "Words of a vulgar nature" shall be those words, the connotation of which is "vulgar," "usually considered vulgar," "not used in polite conversation," or equivalently designated in Webster's Collegiate Dictionary, current edition.

. . .

3.  The policies underlying this rule are to:

. . .

b. Protect the public and children, who by necessity must use the public highways and therefore be exposed to license plate messages, from offensive, obscene, or unduly distractive messages that may tend to impair their safety or privacy;

c. Protect license plates, which are necessary to the lawful regulation and identification of vehicles, from vandalism and defacement that impair their function.

. . .

The City also informs prospective applicants for vanity plates on its website that "[a] Motor Vehicle Registration Branch review staff will reject requests for personalized license plates with letter and number combinations that are deemed to be potentially offensive to good taste and decency" including "terms of lust, depravity, prejudice, hostility, contempt, and profanity in English or any other language" and warns them that they "must follow state government guidelines prohibiting lewd, obscene or hateful language."  Dkt. No. 62-3 at 2–3.  In short, this extensive statutory and regulatory scheme grants the City and State the power

to "effectively control[] the messages conveyed by exercising final approval authority over their selection." *Walker*, 576 U.S. at 213 (brackets, quotation marks, and citations omitted). Any alphanumeric message that has made its way onto the public streets can thus be presumed to have been vetted and approved by government authorities. As such, this factor also weighs towards finding government speech.

Finally, Odquina provides no new reasons to alter the above analysis since the Court addressed the same issue in conjunction with his motions for injunctive relief in 2022. In fact, Odquina cites to *Carroll v. Craddock*, 494 F. Supp. 3d 158 (D. R.I. 2020), *Kotler v Webb*, 2019 WL 4635168, (C.D. CA 2019), and *Ogilvie v. Gordon*, 540 F. Supp. 3d 920 (N.D. CA 2020) in support of his non-government speech argument. Dkt. No. 76 at 3-4. These are the *exact* cases he offered in support of his motions for a preliminary injunction and temporary restraining order. *See* Dkt. No. 21 at 5–7 ("With regard to vanity plates of personal expression, *Carroll v. Craddock*, 494 F. Supp. 3d 158 (D. R.I. 2020), *Kotler v Webb*, 2019 WL 4635168, (C.D. CA 2019), and *Ogilvie v. Gordon*, 540 F. Supp. 3d 920 (N.D. CA 2020) are most instructive."); Dkt. No. 22 at 4–7 (same). The Court has *already rejected* these arguments, distinguishing the cases and explaining why it was not persuaded by the rationale of others. *See* Dkt. No. 31 at 27–29. Such analysis need not, and will not, be rehashed here. Suffice to say,

Odquina's arguments lack as much merit now as they did during the preliminary relief stage.[11]

In sum, the law is no different now than it was when the Court decided Odquina's motion for a preliminary injunction. *See* Dkt. No. 31 at 15–29. "The fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message or transform the government's role into that of a mere forum-provider." *Walker*, 576 U.S. at 217. As such, upon considering all three factors referenced above, the Court once again finds that Hawaiʻi's vanity plate alphanumerics are government speech within the meaning of *Walker*.[12] The Free Speech Clause is therefore inapplicable, and Odquina's First Amendment challenge fails.

### b.   <u>Nonpublic Forum Speech</u>[13]

Even assuming that license plate alphanumerics constitute nonpublic forum speech rather than government speech, Odquina's as-applied challenge

---

[11]To the extent that Odquina asserts that the mere *existence* of these non-binding cases entitles him to survive a Rule 12(b)(6) motion, he is mistaken. Put simply, the fact that some other courts have reached alternate outcomes based on different facts and statutory/regulatory schemes does not grant Odquina the automatic right to progress past the pleadings stage.

[12]Indeed, even the *Walker* dissenters agree. *See Walker*, 576 U.S. at 222 (Alito, J., dissenting) ("all license plates unquestionably contain *some* government speech (*e.g.,* the name of the State and *the numbers and/or letters* identifying the vehicle)" (emphasis added)).

[13]The parties appear to concur that if vanity plate alphanumerics do not constitute government speech, they should be analyzed as nonpublic forum speech. *See* FAC at ¶¶ 50, 109–10; Dkt. No. 65-1 at 11–15; Dkt. No. 66-1 at 7–8.

nevertheless still fails, as HRS § 249-9.1 and Rule 6.8 are both reasonable and viewpoint neutral.

### i.   Law of the Case

As an initial matter, the Court first addresses the City's contention that "[e]ven if this Court were to consider license plates to be a nonpublic forum, both this Court and the Ninth Circuit have already ruled that a ban on profanity is reasonable and viewpoint neutral" and therefore, "[p]er the law of the case doctrine, there is no reason to reconsider those rulings." Dkt. No. 66-1 at 7–8.

The law of the case doctrine provides that "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court, in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). Generally, "decisions at the preliminary injunction phase do not constitute law of the case" because "a preliminary injunction decision is just that: preliminary." *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013) (quoting *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1114 (9th Cir. 2007)). Nevertheless, even in such decisions, "conclusions on pure issues of law . . . are binding." *Ranchers Cattlemen*, 499 F.3d at 1114.

Here, the Ninth Circuit's memorandum opinion affirming this Court's denial of Odquina's motions for a preliminary injunction and a temporary restraining

order is binding as law of the case.  Although the decision was issued during the preliminary injunction stage, the Circuit reached a purely legal conclusion when it unequivocally held that, "[b]ecause the relevant regulations are reasonable and do not restrict messages based on their viewpoint, they are constitutionally permissible." Dkt. No. 46 at 3.  Such statements are binding and cannot be simply cast aside.  *See* 9th Cir. R. 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case . . . ."); *Ranchers Cattlemen*, 499 F.3d at 1114 ("A fully considered appellate ruling on an issue of law made on a preliminary injunction appeal . . . becomes the law of the case for further proceedings in the trial court on remand and in any subsequent appeal." (brackets, quotation marks, and citations omitted)); *cf. Center for Biological Diversity*, 706 F.3d at 1091 (finding that law of the case did not apply where the "prior panel's statement that it was affirming 'for the reasons stated by the district court' is not a clear determination of the statutes and regulations relevant to this case.").  As such, any contention by Odquina that the differing standards of review between a preliminary injunction and a motion to dismiss renders law of the case inapplicable is unavailing.[14]  *See* Dkt. No. 75 at 4–

---

[14]Odquina also asserts that the Court should elect not to abide by law of the case as "the doctrine is discretionary." Dkt. No. 75 at 6.  That assertion, however, is erroneous under these circumstances.  Indeed, the very case Odquina cites for this proposition—*United States v. Houser,* 804 F.2d 565 (9th Cir. 1986)—explains:

5, 6–7.  The Ninth Circuit's ruling that HRS § 249-9.1 and Rule 6.8 are reasonable and viewpoint neutral in light of the First Amendment is the law of this case.

### ii.    <u>Reasonable and Viewpoint-Neutral</u>

Even assuming that law of the case does not apply, however, the Court would still find that Odquina has failed to establish that HRS § 249-9.1 and Rule 6.8 constitute unconstitutional restrictions on nonpublic forum speech.[15]

Government restrictions on private speech in a nonpublic forum do not violate the First Amendment provided that they are both reasonable and viewpoint neutral.  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985); *see also Summum*, 555 U.S. at 470.  Although the government may impose content-based restrictions by prohibiting any speech on a certain subject matter, it is "a core postulate of free speech law" that once that particular topic has been

---

The legal effect of the doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court or an appellate court.  All rulings of a trial court are subject to revision at any time before the entry of judgment.  A trial court may *not*, however, reconsider a question decided by an appellate court.  When matters are decided by an appellate court, its rulings, unless reversed by it or a superior court, bind the lower court.  Upon remand, an issue decided by an appellate court may not be reconsidered.

*Houser*, 804 F.2d at 567 (quotation marks and citations omitted), *abrogated on other grounds by Christianson v. Colt. Indus. Operating Corp.,* 486 U.S. 800, 816–17 & n.5 (1988).  As such, this Court *must* abide by the Ninth Circuit's decision.

[15]Although Odquina asserts that he also challenges the City's "other 'written' and unwritten customs, policies, habits etc. that apparently were not vetted or properly promulgated pursuant to HRS Chapter 91," he fails to precisely identify such practices or explain how they violated the First Amendment.  Dkt. No. 75 at 16–17 n.16; *see also* FAC at ¶¶ 70–76.  The Court declines to speculate what these might be and does not address the subject further.

allowed, "[t]he government may not discriminate against speech based on the ideas or opinions it conveys." *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019); *accord Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829–30 (1995); *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring in part). Accordingly, "[t]he test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed." *Tam*, 582 U.S. at 248.

In assessing "reasonability," the Court must consider the restrictions "in light of the purpose of the forum and all the surrounding circumstances." *Cornelius*, 473 U.S. at 809.  Such restrictions, however, "need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation." *Id.* at 808. Accordingly, "'common-sense' . . . is sufficient . . . to uphold a regulation under reasonableness review." *United States v. Kokinda*, 497 U.S. 720, 734–35 (1990) (O'Connor, J., plurality opinion).

Here, Odquina first asserts that the State and City unconstitutionally engaged in viewpoint discrimination by "favor[ing] clean language, versus disfavored profane language."  Dkt. No. 75 at 15; *see also* Dkt. No. 76 at 11–12; FAC at ¶¶ 11, 82.  According to Odquina, his message "is not merely that he opposes

something but *how* he opposes it."[16]  Dkt. No. 75 at 16; Dkt. No. 76 at 12.  Indeed, his message is so "coarse, offensive, and profane . . . that no other set of three or four letter words can adequately communicate the same message."  Dkt. No. 75 at 13; Dkt. No. 76 at 10.  Odquina therefore claims that his use of profanity— specifically the word "FCK"—is itself a viewpoint such that recalling his vanity plate under HRS § 249-9.1 and Rule 6.8 was unconstitutional.  *See* Dkt. No. 75 at 13–16; Dkt. No. 76 at 10–12.

As already explained at length in the Court's previous Order and the Ninth Circuit's opinion, however, profanity is simply not a viewpoint.  *See* Dkt. No. 31 at 36–41; Dkt. No. 46 at 2–3.  Although the First Amendment may protect an individual's right to express his "offensive" beliefs on a given topic, it does not enshrine an absolute right to express those beliefs in whatever *manner* he chooses.  *See Brunetti*, 588 U.S. at 418 (Sotomayor, J., concurring in part and dissenting in part) ("Restrictions on particular modes of expression do not inherently qualify as viewpoint discrimination.").  In fact, the Supreme Court has repeatedly upheld restrictions on the use of "profane" or "offensively lewd and indecent speech."  *See*

---

[16]Odquina originally also asserted that the City recalled his license plate because of his expressed "displeasure with an organization, Black Lives Matter."  *See* FAC at ¶¶ 64–65.  Notably, however, Odquina provides *no* support for these assertions.  Moreover, his claim is explicitly contradicted by the City's communications with Odquina regarding the recall.  *See* Dkt. No. 62-2 at 2 ("Your personalized special license plate has been determined to be publicly objectionable *due to an implied expletive* in the first three combination of letters in the license plate." (emphasis added)).

*F.C.C. v. Pacifica Found.*, 438 U.S. 726, 745–51 (1978); *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685 (1986).  "To treat a restriction on vulgarity, profanity, or obscenity as viewpoint discrimination would upend decades of precedent" and "risk destabilizing government practice in a number of . . . contexts." *Brunetti*, 588 U.S. at 418–19, 419 n.7 (collecting cases).  In short, "[t]he First Amendment protects the freedom of speech; it does not require the Government to give aid and comfort to those using obscene, vulgar, and profane modes of expression." *Id.* at 401 (Roberts, C.J., concurring in part and dissenting in part).

Odquina's challenges to the reasonableness of HRS § 249-9.1 and Rule 6.8 are similarly unavailing.[17]  In a section of the FAC titled, "Reasonableness," Odquina appears to assert that HRS § 249-9.1 and Rule 6.8 are unconstitutional, as "it is impossible to sanitize and disapprove all things offensive" such that "[t]here is no way to properly apply State's statute and County's rules, regarding vanity plates, without engaging in content and or viewpoint discrimination and that discrimination is tied to the subjective opinion of a government bureaucrat and targets ideas that offend in violation of the First Amendment to the United States

---

[17]It is unclear whether Odquina contests reasonableness.  *See* Dkt. No. 75 at 10 ("With regard to the reasonableness claims in the 1AC, first Odquina alleges that a reasonableness analysis is unnecessary and inapplicable when the government disfavors content and viewpoint because it is undesirable because it is offensive and/or profane."); *but see* FAC at ¶ 114 ("If a reasonableness analysis is applied to the nonpublic forum that is the applicant specific alphanumeric combination for vanity license plates, State's statute and County's rule and County's application of the statute and rule are unreasonable.").  Nevertheless, the Court will address it.

Constitution."  FAC at ¶¶ 115, 118.  Accordingly, Odquina claims that the City

"has a habit, policy, rule, regulation and or custom of unreasonable application,"

including in the instant circumstances.  *See id.* at ¶¶116, 119.

Odquina ignores, however, that HRS § 249-9.1 and Rule 6.8 need only

provide "objective, workable standards" for their application and be reasonable as

a matter of "common sense" in light of the forum's purpose.  *See Minnesota Voters*

*All. v. Mansky*, 585 U.S. 1, 21 (2018); *Kokinda*, 497 U.S. at 734–35.  Here, HRS §

249-9.1 explicitly directs the City to adopt just such guidelines.  *See* HRS § 249-

9.1 ("The director of finance shall adopt rules pursuant to chapter 91 to carry out

this section.").  And to this end, the City has promulgated extensive guidance on

the types of vanity plate combinations that are barred, the definitions of prohibited

words and phrases, the goals of its regulations, the process of review, and the

standards that apply throughout.  *See generally* Rules 6.7, 6.8, 6.12–6.16; Dkt. No.

62-3.  Given this level of detail and the strict limits on City employees' use of

discretion, the City's guidelines are far from being subjective or non-workable in

violation of the First Amendment.

Moreover, the City and State's restrictions are also eminently reasonable in

light of their stated policy interests, including to:

> b. Protect the public and children, who by necessity must use the public
> highways and therefore be exposed to license plate messages, from
> offensive, obscene, or unduly distractive messages that may tend to
> impair their safety or privacy;

      c.  Protect license plates, which are necessary to the lawful regulation and identification of vehicles, from vandalism and defacement that impair their function.

Rule 6.8(3)(b)–(c).  Contrary to Odquina's assertions, a rule restricting license plate profanity furthers both of these legitimate government interests by sheltering members of the public and children from viewing "obscene" or "offensive" messages in the course of their daily lives and disincentivizing vandalism which might impair the primary function of license plates as a means of vehicle identification.  *See* Dkt. No. 31 at 33–34; *see also Mitchell v. Maryland Motor Vehicle Admin.*, 148 A.3d 319, 337 (Md. 2016) (finding that "[t]he prohibition of 'profanities, epithets, or obscenities' on vanity plates relates reasonably to Maryland's purposes of vehicle identification and revenue generation, which involve the public display of license plates."); *Perry v. McDonald*, 280 F.3d 159, 169–70 (2d Cir. 2001) (finding Vermont's restrictions on offensive license plate terms reasonable in light of the state's interests in identifying vehicles and not associating the state with such speech); *cf. Ogilvie*, 540 F. Supp. 3d at 930–32 (finding California's prohibitions on license plate combinations that were "offensive to good taste and decency" unreasonable where they were "haphazardly interpret[ed]" and lacked objective definitions or criteria).  As such, Odquina fails to demonstrate that the government's restrictions on license plate profanity are unreasonable in any way, shape, or form.

In sum, whether law of the case applies or not, Odquina has given *no* reason for this Court to find that anything has changed with respect to either this Court or the Ninth Circuit's earlier findings.  His as-applied First Amendment challenge is, therefore, dismissed.

## II.   <u>Facial Free Speech Challenge</u>

In Counts I, III, IV, and V, Odquina raises facial First Amendment challenges to HRS § 249-9.1 and Rule 6.8.  Specifically, Odquina claims that HRS § 249-9.1 and Rule 6.8 are unconstitutionally vague, overbroad, and underinclusive.  *See* FAC at ¶¶ 94–108, 117, 119.  In response, the City and State assert that each of these contentions lacks merit given the text and structure of HRS § 249-9.1 and the Rules.  *See* Dkt. No. 65-1 at 15–20; Dkt. No. 66-1 at 9, 16–17.  The Court addresses each in turn.

### a.   <u>Vagueness and Overbreadth</u>

A statute may be facially unconstitutional under the First Amendment where it is either vague or overbroad.  *Adamian v. Jacobsen*, 523 F.2d 929, 933 (9th Cir. 1975).  Such doctrines are related, but conceptually distinct.  *See Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983).

First, "[a] law is unconstitutionally vague if it fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement."  *Hum. Life of Washington Inc. v.*

*Brumsickle*, 624 F.3d 990, 1019 (9th Cir. 2010) (quotation marks and citation

omitted).   This standard does not require "perfect clarity . . . even when a law

regulates protected speech." *Id.* (quotation marks and citation omitted); *see also*

*Rose v. Locke*, 423 U.S. 48, 49–50 (1975) ("Many statutes will have some inherent

vagueness, for in most English words and phrases there lurk uncertainties."

(brackets, quotation marks, and citation omitted)).   Accordingly, "[a]lthough it

may be the better practice to give statutory terms a definition the legislature's

decision not to do so does not render such statutes unconstitutionally vague."

*Lester v. Falk*, 751 F. Supp. 853, 856 (D. Haw. 1990).

 Similarly, a party may "challenge an ordinance under the overbreadth

doctrine in cases where every application creates an impermissible risk of

suppression of ideas." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 129

(1992) (citations omitted).   In such cases, "a law may be invalidated as overbroad

if a substantial number of its applications are unconstitutional, judged in relation to

[its] plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010)

(quotation marks and citation omitted).   A law may also be struck down as

overbroad if it "vests unbridled discretion in a government official over whether to

permit or deny expressive activity." *City of Lakewood v. Plain Dealer Publ'g Co.*,

486 U.S. 750, 755 (1988).   In conducting such analysis, the Court must consider

whether "a law subjecting the exercise of First Amendment freedoms to the prior

restraint of a license [] contain[s] narrow, objective, and definite standards to guide the licensing authority." *Forsyth Cnty.*, 505 U.S. at 131 (quotation marks and citations omitted).

In deciding either a vagueness or an overbreadth challenge, "a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 n.5 (1982); *see also Forsyth Cnty.*, 505 U.S. at 131 ("In evaluating respondent's facial challenge, we must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it."). Proponents therefore face a "heavy burden in advancing their claim." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (quotation marks and citation omitted).

Here, HRS § 249-9.1 states simply: "The director of finance shall not issue special number plates which . . . are . . . publicly objectionable." HRS § 249-9.1. Although the statute does not define the meaning of the term, "publicly objectionable," it nevertheless directs the City to "adopt rules . . . to carry out this section." *Id.* The City did precisely that. *See* Rule 6.1 ("These rules govern the procedures to be followed for the application and issuance of special number plates."). Accordingly, the State asserts—and Odquina does not dispute—that the

facial constitutionality of HRS § 249-9.1 should be considered in light of Rule 6.8. *See* Dkt. No. 65-1 at 16–17; Dkt. No. 75 at 9.

Viewed as such, the Court does not find that HRS § 249-9.1 and Rule 6.8 are unconstitutionally vague or overbroad.  Among other things, Rule 6.8(1)(c) provides that applications will be denied if they contain "words or connotations of sexual or vulgar nature, or relating to excretory functions or intimate body parts." Rule 6.8(1)(c)(1).  "Words of a vulgar nature" are defined as "those words, any connotation of which is designated a 'vulgar,' 'usually considered vulgar,' 'not used in polite conversation,' or equivalently designated in the Webster's Collegiate Dictionary, current edition."  Rule 6.8(2)(b); *see also* Dkt. No. 62-3 at 3 (advising applicants that "[f]orbidden phrases include terms of lust, depravity, prejudice, hostility, contempt, and profanity in English or any other language" and that they "must follow state government guidelines prohibiting lewd, obscene, or hateful language.").  Moreover, Rule 6.8 explains that:

> In determining the connotation, inference or tendency of a given request, the Director shall apply an objective test of what inference may reasonably be detected by one conversant with whatever linguistic, numerical or phonetic mode of communication may apply to the request.  The Director may not consider the subjective intent or the declared meaning of the applicant.  The request shall be considered to be the most objectionable connotation that reasonably may be ascribed to it.

Rule 6.8(2)(a).

Accordingly, although HRS § 249-9.1 may not define "publicly objectionable," Rule 6.8 enumerates specifically prohibited types of combinations, defines each of these prohibitions, and provides clear standards to narrowly cabin City employees' consideration of applications. *See generally* Rule 6.8. Given this level of detail, the Court finds that the government's prohibition is neither so vague as to deprive applicants of "a reasonable opportunity to know what conduct is prohibited" nor permits City employees to engage in "arbitrary and discriminatory enforcement." *See Brumsickle*, 624 F.3d at 1019; *cf. Montenegro v. New Hampshire Div. of Motor Vehicles*, 93 A.3d 290, 296–98 (N.H. 2014) (finding a New Hampshire regulation prohibiting vanity license plates that are "offensive to good taste" unconstitutionally vague where it lacked clear standards to prohibit arbitrary or discriminatory application). Odquina's vagueness challenge must therefore fail.

Similarly, the Court also finds that Rule 6.8 provides more than sufficient "narrow, objective, and definite standards to guide the licensing authority" and ensure that any potentially unconstitutional applications do not outweigh the statute's "plainly legitimate sweep." *See Forsyth Cnty.*, 505 U.S. at 131 (quotation marks and citation omitted); *Stevens*, 559 U.S. at 473. As already explained several times over, Rule 6.8 gives City employees clear, specific, and thorough instructions regarding prohibited words and phrases, the definitions thereof, and

the standards to apply in such analyses.  Such guidance constitutes a significant safeguard against potentially unconstitutional applications.  *Cf. Carroll*, 494 F. Supp. 3d at 168–69 (striking down a Rhode Island statute prohibiting license plate combinations "carry[ing] connotations offensive to good taste and decency" as overbroad where the DMV failed to promulgate *any* guidelines for its application). Odquina's overbreadth challenge therefore also fails.

**b.   <u>Underinclusivity</u>**

In addition to overbreadth and vagueness, the City also asserts that Odquina has failed to plausibly state a facial First Amendment underinclusivity challenge to HRS § 249-9.1 and Rule 6.8.  Although it may be "somewhat counterintuitive to argue that a law violates the First Amendment by abridging *too little* speech," the Supreme Court has "recognized . . . that underinclusiveness can raise doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint."  *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 448 (2015) (quotation marks and citation omitted).  Accordingly, although "the First Amendment imposes no freestanding underinclusiveness limitation," *id.* at 449 (quotation marks and citation omitted), "a regulation may be underinclusive where it attempts to give one side of a debate an advantage or where the government seeks to control 'the search for political truth.'"  *Children of*

*the Rosary v. City of Phoenix*, 154 F.3d 972, 982 (9th Cir. 1998) (citing *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994)).

Here, Odquina appears to claim that HRS § 249-9.1 and Rule 6.8 are unconstitutionally underinclusive as several other potentially profane license plates have been approved.[18]  *See* FAC at ¶¶ 96–108.  Odquina asserts that the mere existence of such plates is evidence that "the government cannot possibly ban, exclude and disapprove all vanity plates that constitute messages that are 'objectionable' or all things or messages of a 'sexual or vulgar nature' because expression is ever-expanding, nuanced and both the message delivered, intentional or not, and the message received, are subjective." *Id.* at ¶ 97.  Accordingly, Odquina argues that "the exceptions to the law are so pervasive or without basis as to make the fit unreasonable" and render it "unconstitutionally underinclusive." *See id.* at ¶ 95 (quotation marks omitted).

However, even if these other plates are indeed profane, Odquina has provided *no* evidence that the City's approval of these plates was anything other than accidental.  *Perry*, 280 F.3d at 170 (finding that the existence of erroneously issued license plates in other instances did not support a finding of viewpoint discrimination).  It is unclear whether he even claims otherwise.  *See* FAC at ¶¶

---

[18]These plates include the combinations: "AAF," "CYKA," "HBIC," "DGAF," "FML," "CTFO," "FUDDY," "GFY," and "NOWWTF."  FAC at ¶ 96.

95-97.  Certainly, there is no indication that by approving these plates, the City intended to favor one side of any given debate, control the search for political truth in any way, or engage in a "pattern of unlawful favoritism."  *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002).  Indeed, it is not even clear what debate the City would purportedly be entering.  *See* Dkt. No. 75 at 14 (arguing that the City "just wants to favor the 'clean' side of the debate").  Moreover, there is no indication that these approvals, limited as they are, diminish the credibility of the government's asserted policy interests.  *See* Rule 6.8(3) (setting forth the policy rationales underlying the limitations on vanity plate combinations); *ISKCON of Potomac, Inc. v. Kennedy*, 61 F.3d 949, 956–57 (D.C. Cir. 1995) (upholding a regulation where the exceptions did not "diminish the credibility of the [government's] reasons for its general prohibition.").  In sum, the few claimed plate approvals do not, by themselves, raise any fatal underinclusivity concerns.  Odquina's facial underinclusivity challenge therefore fails.

## III.   <u>Due Process Challenge</u>

After amending his complaint, Odquina raises for the first time procedural and substantive due process claims related to the City's recall of his personalized "FCKBLM" plate.  *Compare* Complaint, Dkt. No. 1, *with* FAC at ¶¶ 120–32.  Specifically, Odquina now asserts that the City violated his due process rights by

recalling his plate without a hearing, and without explicitly informing him as to the specific basis for recall or his right to appeal. *See* FAC at ¶¶ 120–32.

These claims lack merit. To establish either a procedural or substantive due process claim, a "threshold requirement" is that the plaintiff must show that he has "a liberty or property interest protected by the Constitution." *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972)). Such interests arise only "where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Roth*, 408 U.S. at 577). In making such determinations, the Court must look to "the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Id.* (quotation marks and citation omitted).

Here, Odquina has failed to establish that he has a liberty or property interest in his personalized vanity license plate. First, although Odquina asserts that he has a liberty interest in the form of his "first amendment interest in the speech he conveys through his own chosen vanity plate," *see* Dkt. No. 76 at 13, such arguments are properly raised through the First Amendment itself, rather than as a substantive due process claim. *See Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001) (explaining "[i]f, in a § 1983 suit, the plaintiff's claim can be

- 39 -

analyzed under an explicit textual source of rights in the Constitution, a court should not resort to the more subjective standard of substantive due process." (quotation marks and citation omitted)).  And, in fact, Odquina has already done precisely that.  *See* FAC at ¶¶ 42–119.  As such, "the First Amendment, not the Fourteenth Amendment's guarantee of substantive due process, should guide the analysis of the plaintiff's claims."  *Hufford*, 249 F.3d at 1151 (quotation marks, brackets, and citations omitted); *see also supra* 13–38 (finding that Odquina failed to state a First Amendment claim).

Odquina's procedural due process claim similarly fails, as he lacks any cognizable property interest in a specific alphanumeric license plate combination. The language of Hawaiʻi's statutory and regulatory scheme governing vanity license plates makes abundantly clear to prospective applicants that although license plates may be required, *vanity plates* will not automatically issue as of right.  *See* HRS § 249-9.1 ("The director of finance *may provide, upon request,* special number plates . . . [t]he director of finance shall not issue special number plates which have the letter and numeral combination of regular plates, [or that] are misleading or publicly objectionable." (emphasis added)); Dkt. No. 62-3 at 2 ("All personalized plate requests get a first-round review.  The ones deemed questionable get flagged for additional scrutiny."); Rule 6.7(2) ("Applications . . . will not be considered approved until . . . the letter/numeral combination [is]

authorized by the Director for issuance."); Rule 6.8 (setting forth grounds for denial and standards of review).  The government also makes clear that vanity plates are subject to the standard rules and regulations governing their appearance and use, and once issued, remain the property of the State of Hawai'i.  *See* HRS § 249-9.1 ("The special number plates shall conform to the requirements provided for the uniform number plates except that the owner may request the choice and arrangement of letters and numbers."); Dkt. No. 62-3 at 3 ("All license plates issued in the City and County of Honolulu are government property and speak for the Hawaii state government.").  As such, although Odquina may have been issued and took physical possession of the "FCKBLM" license plate, he had no reasonable or "legitimate claim of entitlement to it" such that it would give rise to a constitutionally-protected property interest.  *See Roth*, 408 U.S. at 577; *see also Tuttle v. Land*, 2010 WL 2232210, at *5 (E.D. Mich. May 27, 2010) ("The issuance of the [vanity license plate] to Plaintiff, which remains the property of the State of Michigan and subject to the statutorily-created restrictions regarding issuance and use, did not confer a property interest in Plaintiff.").  Odquina's procedural due process claim, therefore, also fails.

Further, even if Odquina did have a cognizable property interest in a specific vanity plate, the City nevertheless gave him all the process which he was due.  The Supreme Court has explained that the precise requirements of due process depend

on the balancing of three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, the State and City have a significant interest in not having profane language on their license plates, which may encourage defacement, impede identification, and impair people's safety and privacy while on public roads. *See* Rule 6.8(3)(b)–(c); *Perry*, 280 F.3d at 174 (finding a legitimate government interest in not being associated with offensive license plate language). In contrast, any interest that Odquina might possibly have in a specific alphanumeric combination—as opposed to a license plate generally—is *de minimis*. *See Tuttle*, 2010 WL 2232210, at *6 (explaining that the government "did not deprive Plaintiff of his ability to drive . . . Plaintiff was merely deprived of his preferred set of vanity plates." (quotation marks and citation omitted)); *Perry*, 280 F.3d at 174 ("what is at stake here is not [plaintiff's] interest in driving, but merely her interest in driving a vehicle that displays a preferred set of vanity plates. . . . Accordingly, [plaintiff's] interest does not weigh heavily in the *Mathews v. Eldridge* balancing test, and certainly it weighs less heavily than the state's

interest."). Lastly, there is little risk of an erroneous deprivation without a pre-revocation hearing,[19] particularly given that the City's Rules set forth an appellate process[20] which includes the right to a *post*-revocation hearing.[21]  *See* Rule 6.12–6.16; *Perry*, 280 F.3d at 174 (explaining that as offensive plates are ordinarily identifiable from their faces, there are few cases "in which a pre-revocation hearing

---

[19]In fact, there was *no* such risk here, given that Odquina actually received his desired plate and has never given it up.

[20]Odquina also contends that his due process rights were violated because the City failed to inform him that he had the right to appeal the recall/revocation decision under Rules 6.12 to 6.16.  *See* FAC at ¶¶ 123–26, 131–32; Dkt. No. 75 at 18–22.  The City, however, was under no obligation to do so.  *See City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999) (explaining that where post-deprivation state law remedies are publicly available, the holder of a property interest "can turn to these public sources to learn about the remedial procedures available to him.  The City need not take other steps to inform him of his options."); *Vialez v. New York City Hous. Auth.*, 783 F. Supp. 109, 117–118 (S.D.N.Y. 1991) (collecting cases).  Although Odquina contends that the Rules were "nowhere to be found," *see* Dkt. No. 75 at 22, and "hidden from the public," *see* Dkt. No. 76 at 15, it appears he was simply looking in the wrong places.  *Compare* FAC at ¶ 131 ("Based on information and belief, County's rules pertaining to vanity license plates, specifically, the 1990 and 1994 versions of Rules 6.[1]2 through 6.16 were . . . unavailable online through Westlaw or Lexis, unavailable physically or electronically at the Director of Finance's office located in Honolulu City Hall and physically and electronically unavailable at any Department of Motor Vehicle or Department of Customer Service office or station in Honolulu County and not posted on the websites of either the Director of Finance, the Department of Motor Vehicles, or the Department of Customer Services for County"), *with* Dkt. No. 77 at 7 ("the appeal process was memorialized in an administrative rule which, by City Charter, is on file with the City Clerk.").  As such, Odquina could have educated himself as to any post-revocation remedies.

[21]Rules 6.12 to 6.16 only explicitly refer to denials rather than revocations and denials.  *See* Rule 6.12–6.16.  Nevertheless, the parties appear to agree that these Rules would likely also govern revocations.  *See* Dkt. No. 66-1 at 23 n.15 ("reading this rule as applying only to denials of an initial application—rather than as applying to both denials of applications and revocations of existing plates—would be nonsensical, given that any individual [whose] plate was revoked could immediately apply again and then appeal that denial."); Dkt. No. 65-1 at 20 ("Rules 6.12 to 6.16 describe the hearing and appeal process available to individuals who have been denied the issuance of a requested special number plate.  Odquina did not avail himself of this process."); Dkt. No. 75 at 18–19 ("County's rules . . . only afford[] a hearing after disapproval or, in this case, the recall of a previously granted vanity plate (possibly).").

will reduce the risk of an erroneous deprivation of particular vanity plates.").  In

short, after balancing the *Mathews* factors, the Court finds that the City's

procedures were constitutionally adequate under the facts presented.  Odquina's

due process claim, therefore, must be dismissed.

## IV.   <u>Leave to Amend</u>

When a complaint fails to state a plausible claim, leave to amend should be

given when "justice so requires."  Fed. R. Civ. P. 15(a)(2).  Justice does not require

leave to amend, however, when: (1) it would prejudice an opposing party; (2) it is

sought in bad faith; (3) it would produce an undue delay in litigation; (4) it would

be futile; or (5) there has been repeated failure to cure a deficiency.  *Abagninin v.*

*AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen*

*Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Here, Odquina requests that, "rather than dismissal, the court should strongly

consider allowing amendment to the complaint."  Dkt. No. 76 at 17.  Odquina's

claims, however, presented now by counsel twice, all fail as a matter of law.  *See,*

*e.g.*, *supra* 14–22 (finding that license plate alphanumerics constitute government

speech); 38–41 (finding no cognizable liberty or property interest).  Accordingly, leave to amend is denied.

## CONCLUSION

For the reasons set forth herein, Defendants' motions to dismiss, Dkt. No. 65 & 66, and accompanying joinders, Dkt. Nos. 69 & 70, are GRANTED and the FAC is DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND. As a result, the City's counterclaim, *see* Dkt. No. 18-1, is DISMISSED WITHOUT PREJUDICE at the City's request.  *See* Dkt. No. 66-1 at 4 n.3; Fed. R. Civ. P. 41(c).

The Clerk is instructed to enter Judgment in favor of all Defendants pursuant to this Order and then to close this case.

IT IS SO ORDERED.

DATED: April 29, 2024 at Honolulu, Hawaiʻi.

Derrick K. Watson
Chief United States District Judge

---

*Edward Odquina v. City and County of Honolulu, et al.;* Civil No. 22-00407 DKW-RT; **ORDER (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT AND ACCOMPANYING JOINDERS; AND (2) DISMISSING CASE WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**

- 45 -